IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRAYAN EDUARDO PENA REBOLLEDO, ) ) ) | |
| Petitioner, ) ) | |
| v. ) ) | Case No. CIV-26-958-J |
| FRED FIGUEROA, et al., ) ) | |
| Respondents.[1] ) | |

## REPORT AND RECOMMENDATION

Petitioner Brayan Eduardo Pena Rebolledo, a noncitizen,[2] seeks a writ

of habeas corpus under 28 U.S.C. § 2241. Doc. 1.[3] United States District Judge

Bernard M. Jones, II referred the case to the undersigned Magistrate Judge

for initial proceedings under 28 U.S.C. § 636(b)(1)(B), (C). Doc. 3. The

Government responded, Doc. 8, and Petitioner has replied, Doc. 9. So the

matter is at issue.

---

[1]    Warden Fred Figueroa is not a federal official, and the Government did not file a response on his behalf. Doc. 8, at 1 n.1.

[2]    This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[3]    Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

For the reasons below, the undersigned recommends the Court grant Petitioner's habeas petition in part and order Respondents to immediately release Petitioner subject to the same conditions of his earlier parole.

## I.      Factual background and Petitioner's claims.

Petitioner is a citizen of Venezuela. Doc. 1, at 4; Doc. 8, at 5. On January 14, 2025, he arrived at the border at San Ysidro, California. Doc. 1, at 9; Doc. 8, at 5. The Department of Homeland Security (DHS) issued him a Notice to Appear (NTA) charging him as removable under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA),[4] and placed him into removal proceedings under 8 U.S.C. § 1229a. Doc. 1, at 9-10; Doc. 8, at 5-6 & Ex. 1. United States Customs and Border Protection (CBP) agents released him into the country with an appearance date of June 17, 2026. Doc. 8, Ex. 1, at 2. Respondents state they "paroled [Petitioner] into the United States until April 18, 2025." Doc. 8, at 6; *see* Doc. 1, Ex. 2 (stating Petitioner arrived January 14, 2025, and was admitted until April 18, 2025). On May 27, 2025, Petitioner applied for Asylum and Withholding of Removal. Doc. 8,  Ex. 2.

---

[4]      This section is codified in the United States Code at 8 U.S.C. § 1182(a)(7)(A)(i)(I). This section provides that a noncitizen, who at the time of application for admission, was not in possession of (1) a valid unexpired entry document as required by the INA, and (2) a valid travel document/document of identity and nationality as required by regulations is inadmissible.

Petitioner claims that since his release, he has appeared for all of his scheduled check-ins and engaged in no unlawful activity. Doc. 1, at 10. On January 21, 2026, during a regularly scheduled Immigration and Customs Enforcement (ICE) check-in appointment, Respondents took Petitioner into custody. *Id.*; Doc. 8, at 6 & Ex. 3 (arrest warrant).

Petitioner argues that his re-detention without process violated his due process rights under the Fifth Amendment and violated the INA. *Id.* at 10-12. He asks this Court to order Respondents not to transfer him outside this district while this habeas petition is pending; issue an order requiring Respondents to show cause why this Petition should not be granted within three days[5]; order his immediate release "without additional alternatives to detention;" declare his detention is unlawful; and award him attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, and on any other basis justified under law. *Id.* at 12-13.

## II.    Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S.

---

[5]    The Court addressed this request in its Order for Response, Doc. 6.

475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## III.    Discussion.

### A.    The Court has jurisdiction to consider Petitioner's claims.

Petitioner presented himself at a port of entry and was released on parole. Doc. 1, at 9. Respondents contend they are properly detaining Petitioner under 8 U.S.C. § 1225(b)(1) and that the Court has no jurisdiction to review the discretionary decision to re-detain Petitioner during the pendency of his removal proceedings. *See* Doc. 8, at 7 (citing 8 U.S.C. § 1252(a)(2)(B)(ii)). The Court should disagree.

Petitioner does not challenge a discretionary decision to terminate his parole. He instead argues he was arbitrarily detained in violation of his due process rights and the regulations governing his parole. Doc. 1, at 10-12. So the Court has jurisdiction to consider Petitioner's claims. *See Ghamoushi-Ramandi v. Janecka*, 2026 WL 1107385, at *3 (C.D. Cal. Apr. 20, 2026) ("Respondents argue Section[] . . . 1252(a)(2)(B)(ii) strip[s] the Court of

4

jurisdiction to review Petitioner's custody determination and bond orders. However, [the petitioner's] claims are constitutional in nature and do not challenge actions that fall within the discretion of the Attorney General or the Secretary of Homeland Security. The first and second claims raise due process and regulatory challenges to the procedures Respondents afforded Petitioner when they re-detained him.") (alteration omitted) (internal citations and quotation marks omitted); *cf. Mwangi v. Terry*, 465 F. App'x 784, 787 (10th Cir. 2012) ("[T]o the extent Mr. Mwangi challenges the agency's discretionary bond decision, the magistrate judge was correct that the court lacked jurisdiction.").

### B.    Petitioner is entitled to due process.

Petitioner claims that his ongoing detention without a custody review violates his due process rights and the INA. Doc. 1, at 10-12. To the extent that Respondents substantively address Petitioner's statutory and procedural due process arguments, they assert that Petitioner is properly detained under 8 U.S.C. § 1225(b)(1) as an arriving alien at a port of entry. Doc. 8, at 7-9. Additionally, they argue Petitioner's re-detention without written notice or a hearing implicates no due process rights because he "does not have a liberty interest following parole under 8 U.S.C. § 1182(d)(5)(A)." Doc. 8, at 11-12.

Under § 1225(b)(1)(A)(i), "[i]f an immigration officer determines that [the noncitizen] . . . who is arriving in the United States . . . is inadmissible under

5

section 1182(a)(6)(C) or 1182(a)(7) . . ., the officer shall order the [noncitizen] removed from the United States without further hearing or review unless the [noncitizen] indicates either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). An individual detained as inadmissible upon inspection at the border can only be paroled into the United States "'for urgent humanitarian reasons or significant public benefit.'" *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting 8 U.S.C. § 1182(d)(5)(A)); *see also* 8 U.S.C. § 1182(d)(5)(A) (granting discretion to DHS officials to "parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States").

The parties appear to agree that Petitioner was temporarily paroled under § 1182(d)(5)(A) after arriving at the border. *See* Doc. 1, at 9-10 & Ex. 2; Doc. 8, at 7-8. His removal proceedings are ongoing, but Respondents re-detained him in January 2026. Doc. 1, at 10.[6]

---

[6]    An Immigration Judge (IJ) denied Petitioner's request for asylum and ordered his removal on May 11, 2026. *See* Doc. 8, at 6 & n. 5. Petitioner appealed this order on June 3, 2026, and the appeal is pending before the Board of Immigration Appeals. *See* https://acis.eoir.justice.gov/en/caseInformation (last visited July 13, 2026).

Petitioner argues there was no reason to re-detain him and ICE violated its own regulations and his due process rights when it arbitrarily revoked his parole. *Id.* at 11-12. Respondents argue Petitioner's mandatory detention under § 1225(b)(1) does not implicate any due process rights because upon termination of his parole, he was subject to detention under § 1225 as an applicant for admission. Doc. 8, at 7-9. The Court should agree with Petitioner.

Because Petitioner was released on humanitarian parole, "it is illogical to suggest that his re-detention is governed by § 1225(b)(1), which . . . governs procedures for the inspection of aliens arriving in the United States who have not been admitted or paroled." *See Rafibaev v. Noem*, 2026 WL 607559, at *2 (D. Colo. Mar. 4, 2026) (internal quotation marks omitted). Still, even if the Court assumed Petitioner was subject to mandatory detention upon termination of his parole, "Respondents must still comply with the requirements of due process." *E-D-S-O- v. Hernandez*, 2026 WL 1067036, at *3 (W.D. Wash. Apr. 20, 2026); *cf. Qasemi v. Francis,* 2025 WL 3654098, at *7 (S.D.N.Y. Dec. 17, 2025) ("[A] noncitizen paroled into the country—i.e., a noncitizen residing in the United States—is not an arriving alien.").

"The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. Freedom from imprisonment—from government custody, detention, or other forms of physical

restraint—lies at the heart of the liberty that Clause protects." *Zadvydas,* 533 U.S. at 690 (internal quotation marks and alterations omitted); *cf. Trump v. J.G.G.,* 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (internal quotation marks omitted)). Individuals who have been conditionally released from detention have a protected interest in their "continued liberty." *Young v. Harper,* 520 U.S. 143, 147 (1997). "This is true even when the released individual is subject to extensive conditions of release." *Villanueva v. Tate,* 801 F. Supp. 3d 689, 704 (S.D. Tex. 2025).

When the government promulgates regulations "with the force and effect of law," agencies are bound to follow their own "existing valid regulations." *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 265, 268 (1954). Pertinent here, "[t]he statutes and regulations governing immigration and removal proceedings afford important procedural safeguards to detainees." *Villanueva,* 801 F. Supp. 3d at 698-99.

###    1.    Statutory and regulatory framework.

Upon inspection at the time of his request for admission through a port of entry, Petitioner was first detained and then "paroled" into the United States under § 1182(d)(5). Doc. 8, at 6.

Section 1182(d)(5) grants discretion to DHS officials to "parole into the United States temporarily under such conditions as [they] may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any [noncitizen] applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Any revocation of this parole must be based on a decision by a DHS official that either "the purpose for which parole was authorized" has been accomplished or that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A) (stating the DHS Secretary may revoke parole "when the purposes of such parole . . . have been served"). And the parole will be terminated only when "written notice" of this decision is served on the noncitizen. 8 C.F.R. § 212.5(e)(2)(i).

Respondents point out that Petitioner's conditional parole was not arbitrarily revoked upon his arrest but expired by its own terms on April 18, 2025. Doc. 8, at 11. So they argue that "any liberty interest . . . [Petitioner] had [] automatically terminated when [his parole] expired." *Id.*; *see also* 8 C.F.R. § 212.5(e)(1) (stating parole is automatically terminated without written notice "at the expiration of the time for which parole was authorized"). As a result, Respondents argue they are lawfully detaining Petitioner under § 1225(b)(1).

9

*See* Doc. 8, at 8-9, 11-12. But the undersigned finds Petitioner remained on parole even after the date of expiration. *See* Doc. 1, at 10.

"[T]he applicable regulatory scheme requires that, where parole has automatically terminated upon expiration and the noncitizen is not returned to custody for either the timely execution of a removal order or upon an individualized decision by an authorized DHS official, continuation of humanitarian parole may be implied and, thereafter, the procedures for on-notice termination apply." *Caisa Telenchana v. Hermosillo*, 2026 WL 696806, at *7 (W.D. Wash. Mar. 12, 2026). So Respondents cannot rely on the automatic termination clause to justify Petitioner's detention.

The Court should also reject Respondents' argument that Petitioner's detention, upon termination of his parole, must have necessarily reverted to the statute that governed Petitioner's original detention. Doc. 8, at 8-9. Section 1182(d)(5)(A) "does not state that a noncitizen is returned to the 'status' they held upon their parole, that they revert to status as an 'arriving alien,' or that they must be detained." *Qasemi*, 2025 WL 3654098, at *10. Rather, the statute states that, following the expiration of parole, the noncitizen shall (1) "forthwith return or be returned to the custody from which he was paroled" and (2) "thereafter his case shall continue to be dealt with in the same manner

10

as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

Section 1182(d)(5)(A) "recognizes that the parole physically happened, because it contemplates that the noncitizen must be returned to detention." *Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 86 (D.D.C. 2025). Because § 1182(d)(5)(A) recognizes that noncitizens paroled under its authority are released into the United States, it is not logical then to assume they revert to mandatory detention under § 1225(b)(1) as an arriving alien. Especially given that § 1182(d)(5)(A) itself does not state that a noncitizen reverts to the status he or she possessed before the grant of parole.

In fact, § "1182(d)(5)(A) suggests that rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal." *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 302 (E.D.N.Y. 2025). The Court should find that § 1182(d)(5)(A) does not require Petitioner to be detained under the same statutory status as his original detention.

11

### 2. Respondents did not comply with the applicable regulations before revoking Petitioner's parole.

Respondents do not submit that an appropriate official made the discretionary decision to revoke Petitioner's parole. Respondents issued the NTA to Petitioner when he was first paroled. Doc. 8, Ex. 1. So it provided no notice to Petitioner about the termination of his parole when he was detained in January 2026, as § 212.5(e)(2)(i) requires.

The lack of an individualized determination violated the regulations governing the termination of parole. *See, e.g.*, *E-D-S-O-*, 2026 WL 1067036, at *4 ("Nothing in the record shows Respondents provided Petitioner with written notice of revocation of his humanitarian parole, that the original purpose of his parole was accomplished, or that a DHS official with authority determined 'neither humanitarian reasons nor public benefit' warranted continued parole."); *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 418 (S.D.N.Y. 2025) ("Respondents provide no indication that an individualized determination was made as to the revocation of Munoz Materano's parole; nor do they articulate, even now, either that the purpose for which Munoz Materano's parole was authorized has been accomplished, nor that neither humanitarian reasons nor public benefit warrants his continued presence in the United States."); *see also* *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1137-38 (D. Or. 2025) ("This is a

12

grant of discretionary authority, but it has a mandatory requirement—parole may be terminated or revoked only when in the Secretary's opinion the parole's purposes have been met.").

### 3. Respondents violated Petitioner's due process right by summarily revoking his parole.

This Court analyzes Petitioner's procedural due process claim to determine whether he has a protected liberty interest, and what process is necessary to ensure any deprivation of that liberty interest aligns with the Due Process Clause of the Fifth Amendment. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). In examining the necessary process, the Court turns to the three factors set forth in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

"When the [G]overnment grants [a noncitizen] parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment." *Sanchez v. LaRose*, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025); *see also*

13

*Iza v. Arnott*, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026) ("Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972))); *Sahil v. De Anda-Ybarra*, 2026 WL 560216, at *3 (D.N.M. Feb. 27, 2026) (finding "that noncitizens acquire a liberty interest once released from immigration detention"). Petitioner's interest in physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 (stating that an individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process] Clause protects"). DHS deprived Petitioner of his protected status when it re-detained him.

Turning to the *Mathews* factors, the Court finds that Petitioner has a significant private interest in remaining free from detention after spending over a year on parole. By initially releasing Petitioner on parole, the Government necessarily determined that he was "neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). Respondents have presented no evidence that there was a change in this assessment. By permitting Petitioner to remain at liberty for a year, the Government enabled Petitioner to develop a protected liberty interest in remaining out of custody. To be sure, "Congress may make rules as to aliens that would be unacceptable if applied to citizens."

14

*Demore v. Kim*, 538 U.S. 510, 522 (2003). But that power remains "subject to important constitutional limitations." *Zadvydas*, 533 U.S. at 695. And it does not erase Petitioner's significant interest in remaining free from detention.

Respondents do not suggest Petitioner violated any laws while in the United States. During his release, Petitioner's interest in continued liberty grew even stronger as he presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. And "Petitioner's liberty interest does not evaporate when a term of parole expires." *Juan Carlos V.B. v. Chestnut*, 2026 WL 1224238, at *2 (E.D. Cal. May 5, 2026); *see also Begaliev v. Warden of Otero Cnty. Processing Ctr.*, 2026 WL 837109, at *5 (D.N.M. Mar. 26, 2026) (finding a similarly situated petitioner "had a sufficient liberty interest created by the regulations"). The first *Mathews* factor favors Petitioner.

Second, the Court considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The risk of an erroneous deprivation of Petitioner's liberty interest is considerable where ICE arrested him at a scheduled check-in without any notice of the reason or a pre-deprivation hearing.

15

"Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient." *Saqib v. Andrews*, 2026 WL 350830, at \*6 (E.D. Cal. Feb. 9, 2026), *adopted*, 2026 WL 440566 (E.D. Cal. Feb. 17, 2026). Respondents detained Petitioner with no procedural safeguards to determine whether the revocation of his release was justified. This factor weighs in Petitioner's favor. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.").

Finally, the Court considers the Government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. "While this Court recognizes that the [G]overnment has an interest in enforcing immigration laws," the Government's interest in arresting Petitioner without a determination whether he posed a risk of flight or danger is low. *Saqib*, 2026 WL 350830, at \*6; *see, e.g.*, *Diaz v. Kaiser*, 2025 WL 1676854, at \*3 (N.D. Cal. June 14, 2025) ("[T[he Court concludes that the [G]overnment's interest in re-detaining Petitioner . . . is 'low,' particularly in light of the fact that Petitioner[] has long complied with his reporting requirements."). And the Court can discern no significant administrative or fiscal burden associated with placing

16

the burden on the Government to follow its own laws and regulations. *See, e.g.*, *Iza,* 2026 WL 67152, at \*3 ("An alien's opportunity to be heard regarding the revocation of his parole is only meaningful if the [G]overnment comports with its own internal standards regarding parole revocation."). Especially given that Petitioner's detention was not considered necessary for a year.

## C. Remedy.

Habeas is "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "The typical remedy for such detention is, of course, release." *Id.*; *see also Thuraissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."). Federal district courts have broad equitable powers to craft habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). District courts have the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243; *see also United States v. Allen*, 139 F.3d 913 (10th Cir. 1998) ("If the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release.") (quoting *Johnson v. Rogers*, 917 F.2d 1283, 1284 (10th Cir.1990)).

The undersigned finds that ICE breached its own regulations and violated Petitioner's due process rights when it summarily revoked his parole. Based on these findings, the undersigned recommends the Court grant the

habeas corpus petition in part and order Respondents to release Petitioner from detention subject to the same conditions of his earlier parole. This view is shared by numerous courts across the country.[7]

## IV.    Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court **grant** Petitioner's habeas petition in part and **order his immediate release subject to the same conditions that governed his earlier parole. The undersigned also recommends that the Court order the Government to certify compliance by filing a status report within ten business days of the Court's order**, and to promptly provide a copy of this order to Counsel for the Warden of the Diamondback Correctional Facility. Finally, the Court should order that Respondents cannot re-detain Petitioner without notice and

---

[7]    *See, e.g.*, *Singh v. Noem*, 2026 WL 766228, at *10 (D.N.M. Mar. 18, 2026) ("Petitioner's . . . release is required to remedy the ongoing due process violation caused by Petitioner being detained while his conditional parole has not yet been terminated."); *Velasquez Montillo,* 2026 WL 592355, at *10 (concluding immediate release was the appropriate remedy where "there has been no notice of a change in circumstances requiring modification of the November 2021 [order of release on recognizance]"); *Vielma Uzcategui v. Brooksby*, 2026 WL 622751, at *13 (D. Utah Mar. 5, 2026) (same as to petitioner ordered released on her own recognizance in September 2023); *Murzi v. Noem*, 2026 WL 395111, at *2 (D. Colo. Feb. 12, 2026) (ordering petitioner's immediate release where petitioner had previously been released on parole).

a pre-deprivation hearing before a neutral decision-maker where the Government bears the burden of proving, by clear and convincing evidence that Petitioner is a flight risk and a danger to the community.[8]

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by July 16, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[9] The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation

---

[8]    As to Petitioner's request for EAJA fees, Petitioner must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B).

[9]    Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").

disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 13th day of July, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE